In the Matter of Louis H. Pink, Superintendent of Insurance of the State of New York, as Liquidator of Lawyers Title & Guaranty Company, Petitioner.

Walladmoy Realty Co., Inc., Respondent.

Supreme Court, Special Term, Bronx County, October 2, 1942.

[redacted]

*Julius B. Sucher* (*J. George Langfelder* of counsel), for petitioner.

*David Harrison* for respondent.

Eder, J. This is an application under section 1077-c of the Civil Practice Act to obtain surplus income alleged to have been earned by the property of the respondent, for the period of six months prior to July 1, 1942, to apply the same toward the reduction of the past due principal of petitioner's first mortgage covering the premises, and in default to have the remedies provided for by said enactment. This proceeding was begun on June 29, 1942.

The application herein was previously denied upon the ground of insufficiency of the petition and this court therefore did not deem it necessary to pass upon the further point presented that the application was not maintainable and was premature in view of the passage of chapter 790 of the Laws of 1942. Having authorized application for reargument and upon reconsideration being of the opinion that the petition is adequate, this court will proceed to consider and dispose of the application upon the merits.

The respondent contends that the petitioner is not entitled, at the present time, to the relief now sought and that the proceeding herein is premature. In advancing this contention the respondent directs attention to the fact that said section 1077-c was recently amended by chapter 790 of the Laws of 1942, which takes effect January 1, 1943.

Section 2 of this amendatory act provides as follows: "This act shall take effect January first, nineteen hundred forty-three. It shall apply to applications made as provided in section one of this act on the basis of a period of twelve months terminating prior to such effective date hereof." This enactment became a law on May 11, 1942, with the approval of the Governor.

If I correctly apprehend the claim of the respondent it is predicated on the premise that this enactment implies a repeal of section 1077-c as it existed at the time of the passage of the amendatory act and that in consequence any rights to institute proceedings under said section 1077-c prior to the effective date of the amendatory act are terminated.

I am unable to concur in this contention. It is to be observed that there is nothing in this amendatory legislation in express words repealing section 1077-c as it now exists or imposing in any form an *ad interim* suspension of its provisions until the effective date of the new enactment, and such an effect there-

fore can only be sustained, as I view it, upon the theory of implied repeal.

Repeals by implication are not favored and it is a general rule of statutory construction that a statute is not deemed to repeal an earlier one in the absence of express words of repeal unless the two acts are in such conflict that both cannot be given effect. (*People* v. *Dwyer*, 215 N. Y. 46, 51; *Peterson* v. *Martino*, 210 N. Y. 412, 418.) While there is a rule of construction followed in some instances that an amendatory act will be regarded as taking effect from the time of its enactment and approval by the Governor except where its effectiveness is set *in futuro*, in this State there is a presumption that an amendment shall operate prospectively. (*Ely* v. *Holton*, 15 N. Y. 595, 598; *Moore* v. *Mausert*, 49 N. Y. 332, 335; *Wagoner* v. *Fidelity & Casualty Co.*, 215 App. Div. 170, 173.) The common-law rule that every act took effect immediately upon its enactment in the absence of a clause prescribing a different time (*Real* v. *People*, 42 N. Y. 270, 276) has been abrogated in this State. (Legislative Law, § 43.)

The foregoing rules of statutory construction, as developed and expounded by the courts, are ample basis, in my opinion, for holding that section 1077-c, as now in force, has been in no manner repealed and that it remains wholly unaffected by said chapter 790, and that chapter 790 will not become operative until January 1, 1943.

But there is another reason, too, which in my judgment, justifies the conclusion that the Legislature, by the enactment of chapter 790, did not intend it to in any manner impair the efficacy of section 1077-c as it now exists. An examination into the background of this enactment discloses that the judicial council of this State, which sponsored the legislation, sought thereby to simply make more equitable and certain the provision governing time and period for ascertaining the existence of a surplus which might be reached by the mortgagee under section 1077-c for application toward the reduction of the mortgage debt.

The language of the existing section resulted in conflict of rulings in the mentioned respect and the Judicial Council received a number of complaints to the effect that section 1077-c had in operation caused hardship to mortgagors and that it was lacking in definiteness (Eighth Annual Report of the Judicial Council [1942], p. 476), and the aim of the proposed amendment was "designed to eliminate the confusion and conflict of decisions which have been occasioned by the present phraseology of the section." (Id. p. 476.)

Section 1077-c, as it now exists, it was urged, is in some respects too broad and in other respects too narrow and that the wording of this provision apparently left the mortgagee free to select any six-month period, provided only he makes his application immediately at the close of such six-month period, which would invest him with an advantage of selecting that portion of the year during which the operating expenses were lighter. The view was expressed that "there is nothing in the statute to indicate that the court is authorized in such cases to take into account the heavier expenses or the reduced income of the balance of the year." (Id. p. 477.) This obviously produced an inequitable condition. It is then stated that "the amendments to section 1077-c recommended by the Judicial Council, are designed to remedy the foregoing defects." (Id. p. 481.) Then further: "To meet the problem presented by cases in which the income or expenses fluctuate during the year, it is recommended that the period to be considered by the court for determination of the surplus be a twelve month period instead of a six month period. Viewing the income and expenses of the property on the basis of an entire year would certainly make for a more equitable result, and would eliminate the injustice possible under the present section whereby an owner may be compelled to pay a surplus earned in one-half of the year notwithstanding that such surplus is completely wiped out by a deficit suffered in the remaining half of the year." (Id. p. 481.)

It is a general rule in the construction and interpretation of statutes that the intent of the Legislature is the primary object sought (*American Dock Company* v. *City of New York*, 174 Misc. Rep. 813; affd., 261 App. Div. 1063; affd., 286 N. Y. 658), and to this end recourse may be had to legislative debates, records and journals, and reports and notes of commissions, et cetera, since in the construction of statutes the court should have all the light available (1 McKinney's Consol. Laws of N. Y., [1942], §§ 125, 423, and cases there cited), and this is especially so, when the statute is enacted in the identical or similar language, as proposed; and while, of course, the motives and opinions so expressed, are not conclusive upon the courts, they are accepted as an aid, on the theory, as has been said, that "they are a part of the *res gestae*" (Crawford, Statutory Construction, p. 369), and as shedding light. (Id. p. 379.)

It seems clear from the above that the intent and purpose of this legislation were directed toward setting forth a time and period regarded as more equitable than that existing under the

present law, and no more. The manifest purpose of making the law effective at the later date of January 1, 1943, was to enable a sufficient period to elapse to accomplish a transition of procedure without disturbing existing conditions or status and to bring about the change with as little inconvenience as possible.

For the reasons set forth I conclude that the instant application is therefore proper and maintainable and the objection thus interposed is overruled.

As to the relief sought the application is granted to the extent only of making available to the petitioner all records and data as to income and disbursements arising from the operation of the premises in question for the period in concern and to pay over to the petitioner the surplus income, if any, or such part thereof as the court may determine, in reduction of the mortgage debt. For the purpose of determining the amount to be so paid over the motion is held in abeyance until after the respondent shall have made its records and data available to the petitioner and to the court. Upon failure to comply as herein directed within thirty days after service of a copy of the order to be entered hereon, with notice of entry, petitioner may apply to the court, upon proper notice, for permission to maintain an action to foreclose, without further proof.

Motion disposed of as indicated. Settle order.